## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK PICKEL and MELISSA PICKEL | : |
| Plaintiffs, | : |
| vs. | : |
| LANCASTER COUNTY CHILDREN | : |
| AND YOUTH SOCIAL SERVICE, JADE | : |
| LANDIS, individually and in her official | : |
| capacity, NICOLE LAUZUZ, individually | : |
| and in her official capacity, CRYSTAL | : |
| NATAN, individually and in her official | : |
| capacity KRYSTAL WNEK, individually | : |
| and in her official capacity, JASON | : |
| DOYLE, individually and in his | : |
| official capacity, STEPHANIE VAN | : |
| CISCO individually and in her official | : |
| capacity, JANE DOE, individually and | : |
| in her official capacity | : |
| Defendants. | : |

No:

JUDGE:

CIVIL ACTION – LAW

**JURY TRIAL DEMANDED**

## COMPLAINT

**AND NOW** come Plaintiffs Mark Douglas Pickel and Melissa Kay Pickel ("the

Pickels"), by and through undersigned counsel, and for their Complaint against Defendants,

Lancaster County Children and Youth Social Services ("LCCYS"), Jade Landis, Nicole Lauzuz,

Crystal Natan, Krystal Wnek, Jason Doyle, and Stephanie Van Cisco (collectively, "LCCYS

Defendants"), state as follows:

## INTRODUCTION

1.     This action arises under 42 U.S.C. § 1983 from LCCYS' longstanding history of

practices to systematically remove children as young as only a few days old from their homes

and placing them in the foster care program in Lancaster County, in violation of the U.S. Constitution.

2.      LCCYS' illegal practices have led to the Pickels losing their two young grandsons who were only one year and a few days old when they were forcefully taken away and adopted out to two separate families.

3.      Mr. Pickel, an engineer, and Ms. Pickel, a homemaker, have no criminal record, no record of domestic abuse and no record of substance abuse.  Despite their loving, caring and secure home LCCYS refused to recognize their rights to family integrity and obstructed their access to the courts.

4.      The Constitution of the United States grants the right to family integrity and the protection of this bond from state interference.

5.      The Pickels, through this action for declaratory relief and damages, seek to uphold the laws of the United States, and respectfully ask this Court to:

      a.   Permanently enjoin LCCYS from terminating parental rights and removing children from their homes unless there is a reasonable suspicion that the child has been abused or is in imminent danger of abuse; and

      b.   Award compensatory and punitive damages for the immeasurable pain LCCYS has inflicted upon the Pickels.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(1), 1343(a)(3) and 1343(a)(4), 42 U.S.C. §1983, and the First and Fourteenth Amendments to the United States Constitution.

7.     The venue for this action properly lies in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because the events giving rise to this action occurred in Lancaster County, Pennsylvania, and within the Eastern District of Pennsylvania.

**PARTIES**

8.     Plaintiffs, Mark Douglas and Melissa Kay Pickel, are adult individuals currently residing at 429 S High Street, Hanover, York County, Pennsylvania 17331.  Ms. Pickel is the grandmother and Mr. Pickel is the step-grandfather of Sean-Paul David Loraw Jr. ("Sean") and David Mark Loraw ("David").

9.     Defendant, Lancaster County Children and Youth Services, located at 150 North Queen Street, Lancaster County, Pennsylvania 17603, is a county organization organized and existing under the laws of the Commonwealth of Pennsylvania, and is capable of suing and being sued.

10.     Defendant, Crystal Natan is a social worker employed by Lancaster County Children and Youth Services, located at 150 North Queen Street, Lancaster County, Pennsylvania 17603.  Defendant Natan is being sued in her individual and official capacities.

11.     Defendant, Jade Landis, is a social worker employed by Lancaster County Children and Youth Services, located at 150 North Queen Street, Lancaster, Pennsylvania. Defendant Landis is being sued in her individual and official capacities.

12.     Defendant, Nicole Lauzuz is a social worker employed by Lancaster County Children and Youth Services, located at 150 North Queen Street, Lancaster, Pennsylvania. Defendant Lauzuz is being sued in her individual and official capacities.

13.     Defendant, Jason Doyle is a social worker employed by Lancaster County Children and Youth Services, located at 150 North Queen Street, Lancaster, Pennsylvania.  Mr. Doyle is being sued in his individual and official capacities.

14.     Defendant, Krystal Wnek is a social worker employed by Lancaster County Children and Youth Services, located at 150 North Queen Street, Lancaster, Pennsylvania. Defendant Wnek is being sued in her individual and official capacities.

15.     Defendant, Stephanie Van Cisco is a social worker employed by Lancaster County Children and Youth Services, located at 150 North Queen Street, Lancaster, Pennsylvania.  Defendant Van Cisco is being sued in her individual and official capacities.

16.     Defendant, Jane Doe is a social worker employed by Lancaster County Children and Youth Services, located at 150 North Queen Street, Lancaster, Pennsylvania.  Ms. Doe is being sued in her individual and official capacities.

## **BACKGROUND**

17.     Ms. Pickel is the mother of eight, and the grandmother of nine children.  Three of her children are minors between the ages of ten and fifteen and live with the Pickels in York County, Pennsylvania.

18.     The Plaintiffs, Mark and Melissa Pickel ("the Pickels") are good parents and grandparents who have never neglected, abused or otherwise endangered their children or grandchildren.

19.     Jazmin Loraw is an adult child of Ms. Pickel and until her parental rights were terminated, was the mother of Sean-Paul David Loraw Jr. ("Sean") and David Mark Loraw ("David").

20.     Ms. Loraw had a significant alcohol and drug addiction.

4

21.     In or about July 2013, Ms. Loraw married Sean-Paul David Loraw Sr., and, shortly thereafter became pregnant.

22.     Due to her pregnancy, and for the sake of the health and wellbeing of her unborn child, Ms. Loraw stopped drinking alcohol and using drugs.

23.     On December 27, 2013, Mr. and Ms. Loraw welcomed the birth of their first son, Sean, and, on May 7, 2017, their second son, David, was born.

**I.     The Adoption of Sean-Paul Loraw Jr.**

24.     When Sean was born Ms. Loraw needed help raising her son.

25.     At that time, the Pickels offered to alleviate the burden on Ms. Loraw by co-parenting Sean.  Ms. Loraw agreed.

26.     Thereafter, Sean lived with Ms. Pickel part-time and with Ms. Loraw part-time for the first 18 months since Sean's birth.

27.     From the time of Sean's birth, the Pickels were *in loco parentes* with Sean.

28.     In or about February 2015, Ms. Pickel became suspicious that Ms. Loraw was drinking alcohol and using drugs again.

29.     Ms. Pickel confronted Ms. Loraw about her alcohol and drug abuse, but the confrontation caused several arguments between the two in the following weeks.

30.     LCCYS was contacted and initiated an investigation into Mr. and Ms. Loraw.

31.     On or about May 30, 2015, LCCYS Defendant Jane Doe went to Mr. and Ms. Loraw's house.  At that time, she told Ms. Loraw that she either needed to find someone to take custody of Sean, or Defendant Doe would take him and place him with foster parents.

32.     LCCYS did not conduct an investigation to determine whether anyone other than Ms. Loraw was *in loco parentis* with Sean.  Had they done so, they would have determined that the Pickels had an ongoing relationship with Sean, and that Sean lived with the Pickels part-time.

33.     Because Ms. Loraw was unable to reach the Pickels, she called her mother-in-law, Karen Loraw.

34.     Karen Loraw immediately came to Mr. and Ms. Loraw's home and picked up Sean.  Karen Loraw did not have a close, ongoing relationship with Sean, and, in any event, was not able to care for him.

35.     When Ms. Pickel found out about what had happened she called LCCYS to inform the agency of her relationship with Sean and to gain custody, to which she was entitled.

36.     No one from LCCYS returned her calls.

37.     After, Ms. Pickel called and her calls went unanswered for weeks, she decided to call the LCCYS emergency hotline.

38.     The LCCYS emergency hotline operator file a report and asked Ms. Pickel to call back later to talk to a LCCYS representative.

39.     When Ms. Pickel called LCCYS again she explained her relationship with Sean and indicated she wanted to pursue custody.

40.     The LCCYS representative who answered told Ms. Pickel that her grandson was placed with foster parents, that he was "in a much better place" and that Ms. Pickel should "just let it go," thereby evincing a preference for foster care over the child's natural family.

41.     Prior to the telephone call, no LCCYS caseworker had investigated or even spoken to Ms. Pickel.  Even after Ms. Pickel's telephone call, no one from LCCYS came to investigate the Pickels or their place of residence.

6

42.     After the Pickels had not seen their grandson for two months, they filed an application for "kinship care" with LCCYS.

43.     Defendant Krystal Wnek was appointed to conduct an investigation in this matter.

44.     As it turned out, Defendant Wnek was neither fair nor impartial in her investigation.  Defendant Wnek is Mr. Pickel's estranged ex-wife's childhood friend who evidenced their hostility toward Mr. Pickel and his new wife.

45.     Ms. Pickel called LCCYS supervisor Defendant Jordan Doyle to object to Ms. Wnek being the investigator.  She informed him about the familial connection and the concerns the Pickels had regarding Defendant Wnek's neutrality.

46.     Defendant Doyle stated that he would look into it.  Ms. Pickel never heard from him again.

47.     On or about November 5, 2015, LCCYS permanency caseworker Defendant Jade Landis and permanency supervisor Defendant Nicole Lauzuz denied the Pickels' application for "kinship care," based upon Defendant Wnek's investigation.

48.     The LCCYS Defendants produced an investigation that was false in the following:

> a.   LCCYS falsely stated that the Pickels had no contact to Mr. Pickel's minor children.
>
> b.   LCCYS falsely stated that the Pickels' minor children, Markella, Danielle, and Zachary Pickel's medical issues were "significant and require[d] continual care and attention."
>
> c.   LCCYS falsely stated that the Pickels had unstable housing.

      d.  LCCYS falsely stated that the Pickels had recent involvement with a child welfare agency as a client involving their own children.

      e.  LCCYS falsely stated that Markella and Danielle's "school reports indicate[d] a concern for absences during the 2015-2016 school year."

49.     On or about November 20, 2015, the Pickels appealed LCCYS' decision.

50.     LCCYS Defendants denied the Pickels' application for "kinship care."

51.     On or about August 15, 2016, the Court of Common Pleas of Lancaster County terminated Mr. and Ms. Loraw's parental rights.

52.     On or about September 6, 2016, the Court of Common Pleas of Lancaster County ordered that Mr. and Ms. Pickel had *loco parentis* standing to pursue physical custody of Sean.

53.     In or about August or September 2016, Sean's foster parents filed a petition for adoption of Sean.

54.     The Pickels filed an objection to the foster parent's adoption and their own petition for adoption of Sean with the Court of Common Pleas of Lancaster County.

55.     The Court ultimately denied the Pickels' petition for adoption of Sean reasoning that Sean had already lived with his foster parents for two consecutive years and had no relationship with the Pickels.

56.     LCCYS Defendants were solely responsible for the fact that Sean had lived with his foster parents for an extended period of time and that he was unable to live with his grandmother and step-grandfather who were *in loco parentes* with Sean.

**II.    The Adoption of David Loraw.**

57.     In 2017, Ms. Loraw gave birth to her second son, David Mark Loraw.

58.     Because of Mr. and Ms. Loraw's ongoing drug addiction and their traumatic experience with the loss of their first son due to LCCYS' conduct, they decided that the Pickels should care for her son.

59.     Mr. and Ms. Loraw signed adoption papers so that the Pickels could adopt David without any delay after his birth.

60.     David was born at Hershey Medical Center in Dauphin County, Pennsylvania.

61.     A few days after David's birth, Defendant Van Cisco came to the hospital in an attempt to take custody of David.  LCCYS, however, had no jurisdiction over the child in Dauphin County.  Defendant Van Cisco left.

62.     On or about May 9, 2017, Ms. Pickels called LCCYS to inform them of the paperwork in her possession and the Pickels' intention to file a petition for adoption.

63.     On or about May 10, 2017, the Pickels filed a petition for adoption with the Court of Common Pleas of York County, their county of residence.

64.     After approximately two weeks, Hershey Medical Center transferred David to Lancaster General Women & Babies Hospital.

65.     On or about May 15, 2017, the Pickels and Ms. Loraw signed guardianship papers which Ms. Loraw gave to the nurses at Lancaster General Women & Babies Hospital.

66.     Shortly thereafter, Defendant Van Cisco came to Lancaster General Women & Babies Hospital where the nurses showed her the guardianship papers and advised her that the Pickels were David's guardians and prospective adoptive parents.  Defendant Van Cisco left.

67.     On or about May 29, 2017, LCCYS and Defendant Van Cisco filed a Petition with the Juvenile Division of the Court of Common Pleas of Lancaster County seeking emergency custody of David.

68.     The Petition was materially false in that it failed to include the Pickel's adoption proceeding or their guardianship, facts known to the LCCYS Defendants.

69.     On or about May 29, 2017, the Pickels sent an email to Defendant Van Cisco again telling her that they were David's guardians and that they filed a petition for adoption in York County.  The Pickels also forwarded to her copies of both the petition and the guardianship papers.

70.     On or about June 1, 2017, Defendant Van Cisco called Ms. Pickel to advise her that an emergency hearing was scheduled for the following day, but that she did not need to come because LCCYS was planning to ask for a continuance.

71.     LCCYS denied the Pickels the opportunity to be heard in the following:

    a.   LCCYS never served notice of any hearings to the Pickels;

    b.   Defendant Van Cisco falsely stated that the emergency hearing would be continued;

    c.   Defendant Van Cisco and other LCCYS Defendants denied Ms. Pickel's entry into the courtroom for every hearing related to David's adoption, and, particularly, the emergency hearing;

    d.   Defendant Van Cisco falsely stated that she did not know that the Pickels' were David's guardians and that they filed a petition for adoption;

    e.   LCCYS failed to inform the Lancaster Court of Common Pleas that the Pickels were willing and able to care for David.

72.     The Court entered an emergency order in favor of LCCYS.

73.     On or about June 4, 2017, Defendant Van Cisco called Ms. Pickel and advised her that LCCYS was planning to take custody of David, and that she should not attempt to intervene or she would be arrested.

74.     The following day, LCCYS caseworkers went to Lancaster General Women & Babies Hospital, took custody of David and placed him in foster care.

75.     On or about June 12, 2017, the Lancaster Court of Common Pleas held a subsequent hearing on the disposition of the matter with regard to David's status as a dependent child under Pennsylvania state law.  The Pickels did not receive notice of the hearing.

76.     On or about June 26, 2017, the Pickels filed an application for "kinship care" for David.

77.     On or about August 3, 2017, the Pickels' adoption hearing took place at the Court of Common Pleas of York County.  The Pickels did not receive notice of the hearing.

78.     The Court of Common Pleas of York County dismissed the Pickels' petition for adoption of David due to the Court's lack of jurisdiction, and advised the Pickels that they needed to file a petition in Lancaster County.

79.     On or about September 11, 2017, LCCYS completed an investigation of the Pickels' home in consideration of their "kinship care" application for David.

80.     The investigation was false in the following:

   a.   LCCYC falsely stated that the Pickels had a ten year history of child welfare involvement with York and Lancaster children and youth services;

   b.   LCCYS falsely stated that the Pickels had a history of "repeated compulsory school attendance violations;"

    c.  LCCYS falsely claimed that there were "concerns regarding the special medical and emotional needs" of the Pickels' minor children in their home;

    d.  LCCYS falsely stated that Ms. Pickel had repeated traffic violations which resulted in the loss of her driving privileges by the State of Pennsylvania;

    e.  LCCYS falsely stated that "[t]he poor condition of [the Pickels'] home [was] not [a] healthy environment for a premature child with special needs;"

    f.  Defendant Wnek falsely claimed that the Pickels had no references to attest to the Pickels' good character as parents.

81.    On or about December 19, 2017, the Pickels' "kinship care" application was denied.

82.    No child in the Pickels' home has ever been abused, neglected or endangered in any way, shape or form, and no one, including LCCYS, has ever claimed that a child has been abused.

83.    LCCYS—without any justification—intruded upon the Pickels' family life and deprived them of the enjoyment of a relationship with Sean and David. They also deprived Sean and David of a relationship with their natural family and extended family.

84.    While LCCYS and the LCCYS Defendants may believe it is their mission to remove children from their natural families and place them in what they believe to be "superior" foster care families for ultimate adoption and have policies to that affect, such actions violate the constitutional rights of the families who lose their children

## COUNT I

## 42 U.S.C. § 1983

### Violation of Substantive Due Process

**Mark Pickel and Melissa Pickel v. Lancaster County Children and Youth Social Service, Jade Landis, Nicole Lauzuz, Crystal Natan, Krystal Wnek, Jason Doyle, Stephanie Van Cisco, Jane Doe**

85.     Paragraphs 1 through 84 are incorporated herein by reference as if fully restated.

86.     At the time LCCYS and LCCYS Defendants took custody of Sean and David they did not have a reasonable suspicion that the child had been abused or was in imminent danger of abuse.

87.     LCCYS and LCCYS Defendants interfered with Ms. Pickel's liberty interest in the integrity of her family by removing Sean and David from their grandmother and step-grandfather without a reasonable suspicion that they had been abused or were in imminent danger of abuse.

88.     In or about June 2016, LCCYS retained custody of Sean, and in or about June 2017 of David, even though they knew as of those dates that Sean and David had not been abused and were not in imminent danger of abuse.

89.     LCCYS removed Sean and David permanently from their grandmother and step-grandfather and adopted them out to other families, even though it had no legal right to do so.  In doing so, it acted in an arbitrary and capricious manner in violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

90.     WHEREFORE, the Plaintiffs, Mark and Melissa Pickel demand judgment in their favor and against the Defendants, Lancaster County Children and Youth Social Service, Jade Landis, Nicole Lauzuz, Crystal Natan, Krystal Wnek, Jason Doyle, and Stephanie Van Cisco.

## COUNT II

### 42 U.S.C. § 1983

#### Violation of Procedural Due Process

**Mark Pickel and Melissa Pickel v. Lancaster County Children and Youth Social Service, Jade Landis, Nicole Lauzuz, Crystal Natan, Krystal Wnek, Jason Doyle, Stephanie Van Cisco**

91.     Paragraphs 1 through 90 are incorporated herein by reference as if fully restated.

92.     Both the Fourteenth Amendment to the U.S. Constitution and the laws of the Commonwealth of Pennsylvania guarantee individuals whose children have been taken into protective custody notice of a hearing and the right to the hearing itself.

93.     LCCYS and the LCCYS Defendants deprived the Pickels of their fundamental liberty interests by not effectively informing the Pickels of their procedural rights and protections and limiting their rights by not providing notice and prohibiting access to hearings.

94.     LCCYS and LCCYS Defendants subverted these procedural due process guarantees by:

      a.   Placing false and misleading information into Petition filed with the Court of Common Pleas of Lancaster County in order to obtain custody of Sean and David;

      b.   By failing to include relevant exculpatory and explanatory information into the Petition thereby denying the Pickels the right to an informal ruling by the state trial court;

      c.   By denying the Pickels the right to be heard or to present any evidence in their defense;

      d.   By holding hearings at a time before noticed to the Pickels thereby denying them the right to be heard or present any evidence in their defense.

14

## COUNT III

### 42 U.S.C. § 1983

### *Monell* Claim

**Mark Pickel and Melissa Pickel v. Lancaster County Children and Youth Social Service**

95.     Paragraphs 1 through 94 are incorporated herein by reference as if fully restated.

96.     LCCYS developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of families in Lancaster County, which caused the violation of the Pickels' rights.

97.     LCCYS developed and maintained policies or customs to remove children from their natural families and place them in what they believe to be "superior" foster care families for ultimate adoption disregarding the constitutional rights of the children's natural families.

98.     I was the policy and/or custom of LCCYS to ignore the rights of those *in loco parentis* with children when taking children and placing them in foster care.

99.     It was the policy and/or custom of LCCYS to fail to exercise reasonable care in investigating "kinship care" applications by families, including the Pickels, thereby failing to adequately prevent constitutional violations on the part of its caseworkers.

100.    It was the policy and/or custom of LCCYS to inadequately supervise and train its caseworkers, including LCCYS Defendants, thereby failing to adequately discourage further constitutional violations on the part of its caseworkers.

101.    As a result of these policies and/or customs LCCYS caseworkers, including LCCYS Defendants, believed that their actions would not be properly monitored by supervisory social workers and that their misconduct would not be investigated or reprimanded, but would be tolerated.

102.    These policies and/or customs demonstrate a deliberate indifference on the part of LCCYS to the constitutional rights of families within Lancaster County, and were the cause of the violations of the Pickels' rights alleged herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, Mark Douglas Pickel and Melissa Kay Pickel, respectfully request judgment as follows:

A.     That this Court render a Declaratory Judgment stating that the actions of the Defendants in removing Sean and David from the custody of their grandmother and step-grandfather without a reasonable suspicion that the children had been abused or were in imminent danger of abuse, were unconstitutional under the United States Constitution and under federal law;

B.     That this Court enjoin Lancaster County Children and Youth Services from removing children from their homes unless there is a reasonable suspicion that the child has been abused or is in imminent danger of abuse.

C.     That this Court award nominal and compensatory damages to the Plaintiffs;

D.     That this Court award punitive damages to the Plaintiffs;

E.     That this Court award Plaintiffs costs and expenses of this action, including reasonable attorneys fees, in accordance with 42 U.S.C. § 1988 and other applicable law; and,

F.     Any other action which this Court deems appropriate.

Respectfully Submitted,

/s/ Dennis E. Boyle
Dennis E. Boyle, Esquire
Pennsylvania Supreme Court I.D. No. 49618
Whiteford Taylor & Preston LLP
1800 M Street, NW, Suite 450 N
Washington, D.C.  20036
Telephone: (202) 659-6808
Email: dboyle@wtplaw.com

*Counsel for Plaintiff*

Dated: August 9, 2018