**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|   |   |   |
|---|---|---|
| | : | |
| MARK PICKEL and MELISSA PICKEL, | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | NO. 18-3400 |
| | : | |
| LANCASTER COUNTY CHILDREN AND YOUTH | : | |
| SOCIAL SERVICES, JADE LANDIS, | : | |
| NICOLE LAUZUZ [SIC], CRYSTAL NATAL, | : | |
| KRYSTAL WNEK, JASON DOYLE, | : | |
| STEPHANIE VAN CISCO, and KAYLA TEEPLES, | : | |
| Defendants. | : | |

_____

**Henry S. Perkin, M.J.**                                              **September 30, 2020**

## MEMORANDUM

This matter is before the Court on cross-Motions for Summary Judgment of Plaintiffs and all Defendants. Plaintiffs currently reside in York County, Pennsylvania and are a grandmother and step-grandfather who unsuccessfully attempted to obtain custody of and adopt two minor grandsons in Lancaster County, Pennsylvania.  Plaintiffs assert a cause of action under 42 Pa. C.S.A. § 1983 for the alleged violation of their federal substantive and procedural due process rights. Defendants are the Lancaster County Children and Youth Social Services Agency ("LCCYSA") and several of its current and former employees and/or agents.  Defendants Jade Landis and Nicole Lauzus ("Landis and Lauzus"), a permanency caseworker and supervisor employed by COBYS Family Services which contracted to work with LCCYSA, move for summary judgment of the claims against them.  LCCYSA and its current employees who comprise the remaining Defendants ("LCCYSA Defendants") separately move for summary judgment. Plaintiffs move for partial summary judgment on the municipal liability claims asserted

against LCCYSA.  Having reviewed and considered the contentions of the parties, the Court is prepared to rule on the pending motions for summary judgment.

## I.   **FACTS**

Based upon the record papers, exhibits, depositions, and the parties' statements of undisputed facts,[1] the pertinent facts to this Court's determination are as follows:

Plaintiffs Melissa Pickel ("Mrs. Pickel") and Mark Pickel ("Mark Pickel") (hereinafter "Plaintiffs") are the maternal grandmother and maternal step-grandfather of minor children Sean-Paul David Loraw Jr. ("S.P.L") and David Mark Loraw ("D.M.L."). ECF No. 54-3 ¶ 1.  S.P.L. and D.M.L. are the biological children of Jazmin Loraw ("Mrs. Loraw"), Mrs. Pickel's daughter, and Sean Loraw ("Mr. Loraw") (collectively, the "Loraws"). Id. ¶ 4. S.P.L. and D.M.L. were born in late December of 2013 and early May of 2017.  Id. ¶ 2.  Mr. Pickel has no biological ties to S.P.L. or D.M.L.  Id. ¶ 5.

Plaintiffs reside in York County, Pennsylvania, with their three children, Daniella Pickel, Markella Pickel, and Zachery Pickel. Id. ¶ 3.  Defendant Lancaster County Children and Youth Social Services Agency ("LCCYSA") is a child welfare agency administered by Lancaster County that provides protective services to minor children living within the County. Id. ¶ 6.  At all relevant times, Defendant Crystal Natan served as LCCYSA's Executive Director and Defendants Teeples, Doyle, Van Cisco and Wnek worked for LCCYSA as caseworkers or supervisors. Id. ¶¶ 7, 8.

LCCYA Investigates Allegations of Neglect of S.P.L.

In May 2015, the Loraws were referred to LCCYSA for concerns of drug use and

---

1       Our policies require a Statement of Undisputed Material Facts ("SUMF") in support of summary judgment.  The LCCYA Defendants filed their SUMF at ECF Doc. No. 54, Ex. 3.  Defendants Landis and Lauzus filed their SUMF at ECF Doc. No. 58.  The Plaintiffs filed their SUMF at ECF Doc. No. 53, Ex. 3.

homelessness. ECF No. 54-3 ¶ 9. LCCYSA opened an investigation over concerns that S.P.L. was being neglected. ECF No. 54-3 ¶ 10.  The investigation was initially assigned to Teeples. ECF No. 54-3 ¶ 11. A safety plan was developed in July of 2015 that placed S.P.L. with his paternal grandmother, Karen Loraw, on the condition that the Loraws were not to have any unsupervised contact with S.P.L. ECF No. 54-3 ¶ 12.  Teeples later discovered that Karen Loraw was allowing S.P.L.'s parents to reside in her home overnight, in violation of the Safety Plan. ECF No. 54-3 ¶ 13.  Teeples, acting on the agency's behalf, petitioned the Lancaster County Court of Common Pleas' Juvenile Division (the "Juvenile Court") for custody of S.P.L., and the petition was granted on August 14, 2015. ECF No. 54-3 ¶ 14, 15. On the same day, S.P.L. was placed with nonfamilial foster parents. ECF No. 54-3 ¶ 16.

During the first 16 months of his life, S.P.L. lived with the Loraws at both Karen Loraw's residence and the residence of Helen Fry, Jazmin's maternal grandmother. ECF No. 54-3 ¶ 18.  Although Mrs. Pickel testified at her deposition that S.P.L. lived with the Pickels during the first 16 months of his life for at least three to four days per week and every weekend from January of 2014 to June of 2015, she later contradicted this testimony. ECF No. 54-3 ¶ 19. Plaintiffs admit that S.P.L. was in the custody of the Loraws at the time that LCCYSA first became involved in May of 2015 and he had been in the Loraws' custody since March of 2015 when the Pickels confronted Mrs. Loraw about using drugs again, she became agitated and she prohibited her parents from seeing S.P.L. ECF No. 54-3 ¶ 20; ECF No. 53-3 ¶ 15, 16.

Plaintiffs' Apply To Be A Kinship Resource for S.P.L.

In August of 2015, after S.P.L. had been taken into agency custody, Plaintiffs

contacted LCCYSA and offered to be a kinship resource for S.P.L. ECF No. 54-3 ¶ 22. Wnek completed a study of Plaintiffs' home on September 8, 2015. ECF No. 54-3 ¶ 23. LCCYSA's Placement Review Committee ("PRC") determined that Plaintiffs were not a suitable kinship resource. ECF No. 54-3 ¶ 24.

On November 5, 2015, LCCYSA sent a letter to Plaintiffs notifying them that their kinship resource application had been disapproved. ECF No. 54-3 ¶ 25.  The reasons cited for the disapproval included a history of unstable housing and foreclosure, open civil complaints, child welfare agency involvement, and the needs of the other children in Plaintiffs' home. ECF No. 54-3 ¶ 26. Plaintiffs admit that the reasons cited for disapproval are true and accurate. ECF No. 54-3 ¶ 27. Melissa Pickel has admitted that she has no firsthand knowledge that Wnek was motivated to provide biased information to the PRC. *Id.*

On November 23, 2015, Plaintiffs appealed LCCYSA's decision on the basis that Plaintiffs wished to have S.P.L. placed in their home. ECF No. 54-3 ¶ 28.  Plaintiffs did not appeal the agency's decision to disapprove Plaintiffs as kinship/resource parents. ECF No. 54-3 ¶ 29.  On December 8, 2015, the Commonwealth of Pennsylvania Department of Human Services' Bureau of Hearings and Appeals ("BHA") issued a Rule to Show Cause (the "Rule") to Plaintiffs to show cause why their appeal should not be dismissed on jurisdictional grounds. ECF No. 54-3 ¶ 30.  The Rule gave Plaintiffs thirty (30) calendar days to submit a response. ECF No. 54-3 ¶ 31.  Plaintiffs did not respond to the Rule, and the BHA denied Plaintiffs' appeal on January 15, 2016. ECF No. 54-3 ¶ 32-33.

Plaintiffs' Petition to Adopt S.P.L.

On June 27, 2016, Plaintiffs filed for custody of S.P.L. in the Lancaster County

Court of Common Pleas.  ECF No. 53-3 ¶ 38.  On August 15, 2016, after S.P.L. had been in agency custody for approximately twelve months, the Loraws' parental rights were terminated. ECF No. 54-3 ¶ 34.  On September 6, 2016, following an evidentiary hearing regarding the Plaintiffs' custody petition, Judge Merrill M. Spahn, Jr. of the Court of Common Pleas of Lancaster County granted the Plaintiffs *in loco parentis* standing to pursue physical custody of S.P.L., but stayed the custody proceeding pending resolution of the ongoing dependency proceeding.  ECF No. 53-3 ¶ 39; No. 53-23.  The Resource Parents filed a petition to adopt S.P.L. ECF No. 54-3 ¶ 35.  Plaintiffs filed a competing petition on November 7, 2016. ECF No. 54-3 ¶ 36. The Petition avers that S.P.L. never lived with Plaintiffs, but rather, lived with either the Loraws or his paternal grandmother, Karen Loraw, prior to agency involvement. *Id.*

The Lancaster County Court of Common Pleas' Orphans Court Division (the "Orphans Court") held hearings on the competing petitions over the course of four, non-consecutive days. ECF No. 54-3 ¶ 37.  On August 4, 2017, the Orphans Court dismissed Plaintiff's adoption petition. ECF No. 54-3 ¶ 38.  S.P.L. was adopted by his Resource Parents on September 21, 2017. ECF No. 54-3 ¶ 39.

<u>LCCYA Obtains Custody of D.M.L.</u>

In early 2017, LCCYSA learned that Mrs. Loraw was pregnant with her second child, D.M.L. ECF No. 54-3 ¶ 40. D.M.L. was born at Hershey Medical Center in Dauphin County, Pennsylvania, on May 7, 2017, and Mrs. Loraw and D.M.L. both tested positive for cocaine at the time of D.M.L.'s birth. ECF No. 54-3 ¶ 41, 42.  D.M.L. was placed in the hospital's neo-natal intensive care unit ("NICU") to treat his prematurity and drug exposure. ECF No. 54-3 ¶ 43.

Caseworker Van Cisco met with the Loraws on May 9, 2017, to discuss a possible placement for D.M.L. ECF No. 54-3 ¶ 44.  The Loraws told Van Cisco that they wanted the child placed with Plaintiffs and later the same day, Mrs. Loraw left Van Cisco a voicemail in which she stated that both she and her husband had signed their parental rights to D.M.L. over to Plaintiffs and that Van Cisco would need to "deal with Children & Youth in York County." ECF No. 54-3 ¶ 45-46.

On May 12, 2017, Plaintiffs filed a petition to adopt D.M.L. in the York County Court of Common Pleas. ECF No. 54-3 ¶ 47.  On May 15, 2017, while Plaintiffs' adoption petition was pending in York County, D.M.L. was transferred to Women & Babies Hospital in Lancaster County at the Loraws' request. ECF No. 54-3 ¶ 48.

On May 23, 2017, Van Cisco, acting on behalf of LCCYA, petitioned the Lancaster County Juvenile Court for custody of D.M.L. ECF No. 54-3 ¶ 49.  The Court granted the petition on the same day, and placed D.M.L. with nonfamilial resource parents. ECF No. 54-3 ¶ 50.

On or around May 23, 2017, Van Cisco referred Plaintiffs to LCCYSA's Resource Unit for Wnek to determine whether the Plaintiffs were a suitable kinship resource for D.M.L. ECF No. 54-3 ¶ 51.  On May 29, 2017, Plaintiffs sent Van Cisco a copy of their adoption petition via e-mail. Attached to the same e-mail was a document titled Temporary Guardianship Form that was executed by the Loraws. ECF No. 54-3 ¶ 52.  The Temporary Guardianship Form was never filed with a Pennsylvania Court of Common Pleas. ECF No. 54-3 ¶ 53.

On June 12, 2017, following an adjudication hearing, the Juvenile Court declared D.M.L. dependent, and ordered that the agency's goal should be to find him a permanent,

6

adoptive placement. ECF No. 54-3 ¶ 54.  The Court directed LCCYSA to determine what obligation it had, if any, to intervene in Plaintiffs' adoption proceedings in York County. ECF No. 54-3 ¶ 55.

In July of 2017, LCCYA filed a motion to intervene in the adoption proceedings pending in York County. ECF No. 54-3 ¶ 56. LCCYSA also wrote to the York County Orphans Court to raise concerns that York County did not have jurisdiction over Plaintiffs' adoption petition. ECF No. 54-3 ¶ 57.

On August 3, 2017, the York County Orphans Court held a hearing to consider Plaintiffs' adoption petition. ECF No. 54-3 ¶ 58. The Court dismissed Plaintiffs' adoption petition, without prejudice, on jurisdictional grounds, and directed Plaintiffs to refile the petition in Lancaster County. ECF No. 54-3 ¶ 59. Plaintiffs never refiled their petition to adopt D.M.L in Lancaster County. ECF No. 54-3 ¶ 60.

LCCYSA Disapproves Plaintiffs As A Kinship Resource for D.M.L.

After Plaintiffs' adoption petition in York County was dismissed, LCCYSA moved forward with determining whether Plaintiffs were a suitable kinship resource for D.M.L. ECF No. 54-3 ¶ 61. Wnek was tasked with performing another study of Plaintiffs' household and visited Plaintiffs' home on September 11, 2017. ECF No. 54-3 ¶ 62, 63. Wnek opined that  Plaintiffs' home was in worse condition that it had been in September 2015. ECF No. 54-3 ¶ 64. LCCYSA sent Plaintiffs a letter on December 19, 2017, notifying them that their kinship application had been denied. ECF No. 54-3 ¶ 65.

Plaintiffs appealed the agency's decision to the BHA. ECF No. 54-3 ¶ 66.  On April 24, 2018, the BHA mailed the parties a letter advising them that a hearing on the merits was scheduled for June 28, 2018. ECF No. 54-3 ¶ 67.  On June 28, 2018, at

approximately 8:46 a.m., BHA received a call from Mrs. Pickel who said she would not be attending the hearing. ECF No. 54-3 ¶ 68.  At approximately 9:16 a.m., an administrative law judge convened the hearing but held the hearing in recess for a half hour to allow Plaintiffs time to arrive at court. ECF No. 54-3 ¶ 69, 70.  At approximately 9:45 a.m., the ALJ reconvened the hearing; however, Plaintiffs never appeared for the hearing. ECF No. 54-3 ¶ 71.  LCCYA moved for a dismissal of the appeal based, inter alia, on Plaintiffs' failure to appear for the hearing. ECF No. 54-3 ¶ 72. On July 24, 2019, BHA dismissed Plaintiffs' appeal. ECF No. 54-3 ¶ 73.

The Lancaster County Juvenile Court terminated the Loraws' parental rights to D.M.L. on February 12, 2018. ECF No. 54-3 ¶ 74.  D.M.L. was adopted by his Resource Parents on May 22, 2019. ECF No. 54-3 ¶ 75.

Jade Landis and Nicole Lauzus

As of 2015, Defendant Jade Landis was employed as a permanency caseworker with COBYS Family Services, which contracted to work with LCCYSA. ECF No. 58 ¶ 50, 51.  She was assigned to work on S.P.L.'s case in September 2015 and her work focused on the biological parents, the child, and the resource parents with whom S.P.L. had been placed by LCCYSA prior to her involvement in the case. ECF No. 58 ¶ 51, 52. She saw S.P.L. monthly at the home of the resource parents. ECF No. 58 ¶ 53.  Her duties also included participation in review hearings regarding S.P.L. and the termination of parental rights hearing that ultimately occurred in 2016. ECF No. 58 ¶ 54.

Landis testified at deposition that that her involvement with Mr. and Mrs. Pickel consisted of a review of the report prepared by Wnek and remote telephone attendance at the subsequent committee meeting at which the Pickels' application was considered by

the LCCYSA review committee. ECF No. 58 ¶ 55.  In attendance at that meeting were permanency director, Betsy Frame, as well as Wnek, a director of quality assurance, a representative from family support, and one or two additional directors. ECF No. 58 ¶ 56. At such a meeting, Wnek, as the resource caseworker, would have submitted her report in advance and was available at the meeting to answer any questions from the directors. ECF No. 58 ¶ 57.  Wnek expressed multiple concerns and recommended that the Pickels' kinship application be denied. ECF No. 58 ¶ 58.  Landis was not charged with performing any investigation of the Pickels, as that is the responsibility of the resource caseworker -- in this case, Wnek. ECF No. 58 ¶ 59.

Apart from observation of a family visit that occurred at the agency in approximately June 2016; brief telephone conversations regarding the Pickels' failed attempt to appeal the kinship denial and the scheduling of review hearings; and seeing the Pickels at a permanency review court hearing that occurred in 2016, Landis had no further involvement with the Pickels' dealings with LCCYSA, and neither she nor anyone else at her organization, including Defendant Lauzus, had any involvement with D.M.L. ECF No. 58 ¶ 60.

Plaintiffs commenced this action by filing a complaint on August 13, 2018, followed by an Amended Complaint on August 8, 2019. ECF No. 58 ¶ 1.

## II.   **STANDARD OF REVIEW**

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission

to the jury or whether it is so one-sided that one party must prevail as a matter of law."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986).  The moving party has
the initial burden of informing the court of the basis for the motion and identifying those
portions of the record that demonstrate the absence of a genuine issue of material fact.
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  An issue is genuine only if there is a
sufficient evidentiary basis on which a reasonable jury could find for the non-moving
party.  *Anderson*, 477 U.S. at 249.  A factual dispute is material only if it might affect the
outcome of the suit under governing law.  *Id.* at 248.

       To defeat summary judgment, the non-moving party cannot rest on the pleadings,
but rather that party must go beyond the pleadings and present specific facts showing that
there is a genuine issue for trial and cannot rely on unsupported assertions, conclusory
allegations, or mere suspicions in attempting to survive a summary judgment motion.
*Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citing *Celotex*, 477
U.S. at 325).  The non-moving party has the burden of producing evidence to establish
*prima facie* each element of its claim.  *Celotex*, 477 U.S. at 322-323.  If the court, in
viewing all reasonable inferences in favor of the non-moving party, determines that there
is no genuine issue of material fact, then summary judgment is proper.  *Id.* at 322;
*Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).  When the non-
moving party will bear the burden of proof at trial, the moving party's burden can be
"discharged by 'showing' - that is, pointing out to the District Court - that there is an
absence of evidence to support the non-moving party's case."  *Jones v. Indiana Area Sch.
Dist.*, 397 F. Supp.2d 628, 642 (W.D. Pa. 2005) (quoting *Celotex*, 477 U.S. at 325).
"[A]n inference based upon a speculation or conjecture does not create a material factual

dispute sufficient to defeat entry of summary judgment." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990).

The summary judgment standard does not change when cross-motions for summary judgment are filed by the parties. *Applemans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1997). When addressing cross-motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Schlegel v. Life Ins. Co. of N. Am.*, 269 F. Supp.2d 612, 615 n.1 (E.D. Pa. 2003) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (1998)).

## III.   <u>DISCUSSION</u>

Subject matter jurisdiction in this case is proper pursuant to 28 U.S.C. § 1331. Plaintiffs claim in their Amended Complaint that the LCCYSA Defendants, Landis and Lauzus violated their right to substantive and procedural due process in violation of the Fourteenth Amendment to the United States Constitution while acting under color of state law, in violation of 42 U.S.C. § 1983.  The Fourteenth Amendment prohibits states from "depriv[ing] any person of life liberty or property without due process of law. . . ."  U.S. Const. Amend. XIV, § 1.  The Due Process Clause has two components, and Plaintiffs assert claims for alleged violations of their substantive due process rights in Count I of the Amended Complaint, and alleged violations of their procedural due process rights in Count II of the Amended Complaint.  In Count III of the Amended Complaint, the Plaintiffs assert municipal liability claims against LCCYSA.

Plaintiffs move for partial summary judgment because they contend that their constitutional right to family integrity was violated by the Defendants and that LCCYSA's policies, customs and procedures violated that right.  Plaintiffs specifically seek partial summary judgment against LCCYSA on the municipal liability claims, arguing that:

> Plaintiffs do not merely contend that LCCYS is liable because of its caseworkers' obvious shortcomings in Sean-Paul and David's cases. Moreover, Plaintiffs do not contend that LCCYS maintained an otherwise "sound training program" which was occasionally negligently administered. Nor do Plaintiffs merely contend that simply improving LCCYS' training would have prevented their constitutional injuries.

> To the contrary, Plaintiffs seek summary judgment against LCCYS where they had one or more policies, procedures, practices, and/or customs which violated their constitutional rights to family integrity where LCCYS[A] had no policies in place that address (1) the  notification of relatives of court hearings; (2) the notification of "kinship care" applicants of purported deficiencies in their home; (3) proposed timelines for the completion of home studies in "kinship care" applications; (4) specific criteria as to how home studies are to be completed; and (5) the rights of individuals who have been granted by a court the status of being in loco parentis. In fact, LCCYS, in some instances, had affirmative policies, procedures, practices, and/or customs which violated their constitutional rights to family integrity. The sad fact of the matter is that LCCYS just did not care about the right to family integrity – it was deliberately indifferent to the Pickel's constitutional rights.

ECF No. 53-2, pp. 15-16.  The LCCYSA Defendants move for summary judgment on all three counts of the Amended Complaint on the grounds that: (1) Plaintiffs did not suffer a cognizable constitutional injury as a matter of law; and (2) the individual LCCYSA Defendants are entitled to qualified immunity on Counts I and II of the Amended Complaint.  Defendants Landis and Lauzus move for summary judgment on the grounds that: (1) Plaintiffs' claims against them are barred by the applicable two-year statute of limitations; (2) Plaintiffs' claims based on an alleged violation of their Fourteenth Amendment rights fail due to a lack of a constitutionally recognized liberty interest in

their relationship with S.P.L. and an impermissible attack on state court proceedings which they failed to appeal; and (3) they engaged in no conduct capable of being deemed conscience-shocking or in deprivation of Plaintiffs' procedural rights.

### A.   Whether Plaintiff's Claims Against Defendants Landis and Lauzus Are Time-Barred

It is undisputed that Defendants Landis and Lauzus had no involvement in D.M.L.'s case.  With respect to S.P.L., Defendants Landis and Lauzus move for summary judgment on the basis that the claims against them are time-barred.  The "statute of limitations for a § 1983 claim arising in Pennsylvania is two years." *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing 42 Pa. Cons. Stat. § 5524(2)). "Under federal law, a cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or should have known of the injury upon which its action is based." *Id.* (quotation marks omitted). The Third Circuit has further instructed that "[t]he determination of the time at which a claim accrues is an objective inquiry; we ask not what the plaintiff actually knew but what a reasonable person should have known." *Id.* A cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Id.*  The Third Circuit has also made clear that "[t]he cause of action accrues even though the full extent of the injury is not then known or predictable. Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Id.* at 634-35 (quotation marks omitted).

Here, Landis and Lauzus' involvement in this case involves the issuance of the November 5, 2015 letter bearing their signatures which denied the Plaintiffs' kinship application.  Mrs. Pickel testified that Plaintiffs were aware of the denial of their kinship

application for S.P.L. by receipt of the November 5, 2015 letter, and as acknowledged by the Plaintiffs' November 20, 2015 response letter, through which they attempted to appeal denial of their kinship application.  Thus, as of November 20, 2015, the Plaintiffs knew or should have known that they their rights had been allegedly harmed.  Their cause of action against Landis and Lauzus accrued on November 5, 2015 and expired on November 5, 2017. Because the instant case was not filed by November 2017, it appears that Plaintiff's claims are barred by the two-year statute of limitation.

Plaintiffs argue that their claims are not barred because the continuing violations theory applies to this case and the involvement of Landis and Lauzus was not limited to the issuance of the November 5, 2015 letter bearing their signatures. Assuming, *arguendo*, that the continuing violations doctrine is applicable to render Plaintiffs' claims against Defendants Landis and Lauzus timely, Defendants Landis and Lauzus are still entitled to summary judgment as outlined in sections III.B-D of this Memorandum because Plaintiffs do not possess the right to family integrity or association relative to their grandchildren as noncustodial, non-*in loco parentis*[2] grandmother and step-grandfather of S.P.L. and D.M.L. as a matter of law in this Circuit.

**B.     Plaintiff's Substantive Due Process Claims.**

Where liberty interests are asserted as a basis for § 1983 liability, the "threshold issue" of "whether the plaintiff has alleged the deprivation of an actual constitutional right at all" must be addressed by the Court.  *McCurdy v. Dodd*, 352 F.3d 820, 825-26 (3d Cir. 2003) (internal quotations and ending citations omitted). The liberty interests of

---

2       *In loco parentis* refers to an individual who assumes parental status and responsibilities for another individual, usually a young person, without formally adopting that person. To be considered *in loco parentis*, a person must have intentionally assumed the rights and duties of a parent. *See Peters v. Costello*, 891 A.2d 705, 710 (Pa. 2005) (citing *Black's Law Dictionary* (7th Ed. 1991), 791).

parents in the care, custody, and control of their children "is perhaps the oldest of the fundamental liberty interests recognized by this Court," *Troxel v. Granville*, 530 U.S. 57, 65 (2000), but the liberty interests of noncustodial grandparents relative to their grandchildren are less defined. The Defendants note that the Third Circuit Court of Appeals has not defined the substantive due process rights of grandparents and other extended family members relative to custodial matters. *Rees v. Office of Children & Youth*, 744 F. Supp. 2d 434, 445 (W.D. Pa. 2010) ["*Rees I*"], *affirmed*, *Rees v. Office of Children & Youth*, 2012 U.S. App. LEXIS 6447 (3d Cir. 2012) ["*Rees II*"]. However, they note that at least four courts in this Circuit have held that noncustodial grandparents who held little more than biological ties to their grandchildren do not have a fundamental liberty interest in associating with their grandchildren. *See Rees I*, 744 F. Supp. 2d at 451- 452 (dismissing § 1983 claims filed by a grandmother on the basis that she did not have a fundamental liberty interest in maintaining contact with her grandchildren, who were never in her custody); *Clayton v. Children's Choice*, Civ. A. No. 09-5727, 2010 U.S. Dist. LEXIS 85259, 2010 WL 3282979, at *13 (E.D. Pa. 2010) (concluding that "[u]nlike parents visà-vis their child, grandparents have no protected liberty interest in the care, custody and management of their children") (citation omitted); *Bresko v. Critchley*, 2012 U.S. Dist. LEXIS 104889, 2012 WL 3066640, (D.N.J. July 26, 2012) (granting summary judgment in defendant's favor on § 1983 substantive due process claims asserted by a non-custodial, non-cohabitating, non-in-loco-parentis grandmother and a non-custodial, non-cohabitating, non-in-loco-parentis aunt); *see also Derr v. Northumberland Cnty.*, 2019 U.S. Dist. LEXIS 184148 (M.D. Pa. Oct. 23, 2019)  (concluding that plaintiff- grandparents did not have a cognizable liberty interest in the care and management of

their grandchildren despite having "resided with their  grandchildren for at least a short period of time before Northumberland County CYS became involved").

In *Rees I*, the District Court acknowledged that courts in sister Circuits have adopted fact-specific, multifactor analyses when addressing the purported due process rights of grandparents and other extended family members. The factors used in these analyses include: whether the plaintiff is a custodial figure or is otherwise acting *in loco parentis* to the children; whether and for how long the children were residing with the plaintiff at the time of the alleged deprivation; whether the plaintiff has a biological link to the children; and whether there is a potential conflict between the rights of the plaintiff and the rights or interests of the children's natural parents. *Rees*, 744 F. Supp.2d at 445.

Applying these factors to the circumstances of this case, we conclude that Plaintiffs do not have substantive due process rights to family integrity or association as noncustodial, non-*in loco parentis* grandparents of S.P.L. and D.M.L.  Mark Pickel is the step-grandfather of both S.P.L. and D.M.L. and has no biological ties to either child or their mother. Although Mrs. Pickel is the biological maternal grandmother of both children, D.M.L. never resided with the Pickels.  Although Mrs. Pickel testified that she took care of S.P.L. on weekends prior to March 2015, this alone does not afford her *in loco parentis* status over S.P.L.  At the time that LCCYSA took custody of S.P.L. in May 2015, Jazmin and Sean Loraw maintained legal and physical custody of S.P.L. and he had little to no contact with the Pickels, including no visitation after March 2015.

Based on the evidence of record, it is the opinion of this Court that the Plaintiffs did not  have *in loco parentis* status when dependency proceedings were initiated on August 14, 2015 as to S.P.L. and May 15, 2017 as to D.M.L. because: (1) neither child

was in the Plaintiffs' care at the time the County was awarded custody of each child; (2) Plaintiffs were not the legal custodian of either child during the dependency proceedings; (3) the "guardianship agreement" that the Loraws executed to purportedly give Plaintiffs custody of D.M.L. was not given to LCYSSA until May 24, 2017, the day after LCYSSA filed for and was awarded custody of D.M.L. and it was never filed with any Pennsylvania Common Pleas Court; (4) the Plaintiffs never filed a motion to intervene in the dependency proceedings; and (5) Jazmin and Sean Loraw's potential neglect was the subject of the dependency proceedings, not the Plaintiffs' care and control of either child. Jazmin and Sean Loraw were still actively involved in the daily care of both children at the time each child was declared dependent and Plaintiffs never assumed the entirety of either child's care and control prior to the dependency decrees.  For all of these reasons, the Court cannot conclude that Mrs. Pickel stood *in loco parentis* to either S.P.L. or D.M.L.

Further support can be found in the action of Judge Spahn of the Lancaster County Court of Common Pleas when he issued a September 6, 2016 order granting Plaintiffs' standing and *in loco parentis* status to pursue physical custody of S.P.L. pursuant to 23 Pa. C.S.A. 5324(3)[3] which provides that a grandparent who is <u>*not*</u> *in loco*

---

3        In state court in Pennsylvania, 23 Pa. § 5324 governs standing for any form of physical custody or legal custody and provides:

The following individuals may file an action under this chapter for any form of physical custody or legal custody:

(1) A parent of the child.

(2) A person who stands *in loco parentis* to the child.

(3) A grandparent of the child who is not *in loco parentis* to the child:
        (i) whose relationship with the child began either with the consent of a parent of the child or under a court order;
        (ii) who assumes or is willing to assume responsibility for the child; and

*parentis* to the child may file an action for custody provided that certain conditions are met.  Under 23 Pa. C.S.A. 5324(2), a grandparent who stands *in loco parentis* to the child has unconditional standing to pursue any form of physical or legal custody over the child. Because Judge Spahn granted standing to Plaintiffs to pursue custody pursuant to 5324(3) and not 5324(2) but stayed those custody proceeding pending resolution of the dependency proceeding, it is evident that Judge Spahn, prior to his ruling, opined that as of September 6, 2016, Plaintiffs did not have *in loco parentis* status with S.P.L. and D.M.L. and his ruling was limited to the custody proceedings that the Plaintiffs initiated. This further undermines Plaintiffs' contentions that they had *in loco parentis* status with S.P.L. and D.M.L.

---

(iii) when one of the following conditions is met:
> (A) the child has been determined to be a dependent child under 42 Pa.C.S. Ch. 63 (relating to juvenile matters);
> (B) the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity; or
> (C) the child has, for a period of at least 12 consecutive months, resided with the grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home.

(4) Subject to paragraph (5), an individual who establishes by clear and convincing evidence all of the following:
> (i) The individual has assumed or is willing to assume responsibility for the child.
> (ii) The individual has a sustained, substantial and sincere interest in the welfare of the child. In determining whether the individual meets the requirements of this subparagraph, the court may consider, among other factors, the nature, quality, extent and length of the involvement by the individual in the child's life.
> (iii) Neither parent has any form of care and control of the child.

(5) Paragraph (4) shall not apply if:
> (i) a dependency proceeding involving the child has been initiated or is ongoing; or
> (ii) there is an order of permanent legal custody under 42 Pa.C.S. § 6351(a) (2.1) or (f.1) (3) (relating to disposition of dependent child).

*See* 23 Pa. C.S.A. § 5324.

The specific factors used to address the purported due process rights of grandparents and other extended family members weigh against recognition of a fundamental liberty interest in this case.  In *Rees I*, although the child spent seven months in the grandparents' custody, the child had not been residing there for a "period of 1 or 2 months prior to her removal" by the County agency, and the District Court held that a grandparent lacks a constitutionally protected liberty interest under those circumstances. 744 F. Supp.2d at 452.  Similarly, although Mrs. Pickel contends that S.P.L. resided with the Pickels during the first sixteen months of his life, he had not been residing with them for at least two months prior to LCCYSA taking custody of him from the Loraws in May 2015.  In *Gordon v. Lowell*, 95 F. Supp.2d 264 (E.D. Pa. 2000), the Court granted summary judgment in favor of  the Berks County Children and Youth Services ("CYS") and its employees, ruling that the biological grandmother and non-biological grandfather of a seven year old girl who was declared a dependent of the court following her mother's arrest lacked any constitutionally protected liberty interest in the care, custody, and management of their grandchildren. 95 F. Supp.2d at 269-70. CYS initially placed the child with the plaintiffs, who cared for her for a six month period when she was two years old. After the plaintiffs voluntarily relinquished custody of the child back to CYS, she was placed in foster care but the plaintiffs maintained visitation with her. The child was adopted by her foster parents with the recommendation of a court-appointed therapist. The plaintiffs never tried to adopt the girl but they later filed suit against Berks County, CYS, and certain of its employees, claiming that the agency had actively discouraged their relationship with the child and, in the process, violated their due process and other rights. The court acknowledged the "long-recognized fundamental liberty interest" which

*parents* have in the care, custody and management of their children as protected by substantive due process principles, but it ruled that this protection is limited to parents. *See id.* at 269 ("Grandparents have no similar liberty interest under the Fourteenth Amendment, and are, therefore, accorded no constitutional protection.") (citing *Mullins v. State of Oregon,* 57 F.3d 789, 797 (9th Cir. 1995)).

Mrs. Pickel did not have physical visitation or legal custody of S.P.L. for at least two months prior to the LCCYSA's involvement with the Loraw family, and as outlined above, Plaintiffs are not possessed of the constitutional rights they assert with respect to S.P.L. and D.M.L. Because neither Plaintiff possesses a liberty interest in the right to family integrity or association relative to their grandchildren as a matter of law in this Circuit, summary judgment must be granted for all Defendants on Count I of the Amended Complaint.  Plaintiffs' Motion for Partial Summary Judgment as to Count I is denied.

### C.      Plaintiffs' Federal Procedural Due Process Claim.

In Count II of their Complaint, Plaintiffs assert a procedural due process claim that implicates the same liberty interest – the right of a non-custodial, non-*in loco parentis* grandparent to the right to family integrity and family association relative to their grandchildren.  Plaintiffs allege that "both the Fourteenth Amendment" to the United States Constitution and "the laws of the Commonwealth of Pennsylvania" guarantee individuals whose children have been taken into protective custody notice of a hearing and the right to the hearing itself. Am. Compl. at ¶ 92. Plaintiffs also allege that the County Defendants deprived them of their fundamental liberty interests by "not effectively informing the Pickels of their procedural rights and protections" and depriving

them of "notice" and "access to hearings" in the underlying dependency proceedings. *Id.* at ¶ 93.

When analyzing Plaintiffs' procedural due process claim, the Court must first determine whether the nature of the liberty interest that forms the basis of the claim is encompassed within the Fourteenth Amendment's protection. *Pressley v. Blaine*, 352 F. App'x 701, 705, 2009 WL 3842753 at *3 (3d Cir. 2009) (citing *Fuentes v. Shevin*, 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed 2d 556 (1972)) (emphasis in original). Only if it is determined that the interest is protected does the Court evaluate what process is due to protect it. *Id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)); *see also Solomon v. Phila. Hous. Auth.*, 142 F. App'x 447, 452, 2005 WL 1805616 at *4 (3d Cir. 2005) (explaining the "bifurcated" procedural due process inquiry: "We first must determine whether the asserted interest is encompassed within the Fourteenth Amendment's protection of life, liberty or property; if so, we then ask whether the procedures available provided the plaintiff with adequate due process.") (citing *Alvin*, 337 F.3d at 116).

The asserted liberty interest is the right to family integrity of noncustodial grandparents relative to their grandchildren. Plaintiffs complain that they were not afforded "notice of a hearing and the right to a hearing itself" at the outset of each child's dependency case. *See* Am. Compl. ¶ 92. For the reasons set forth in the previous section of this Memorandum, these allegations do not establish the deprivation of any constitutionally protected liberty interest. Because Plaintiffs fail to assert a liberty interest sufficient to implicate the requirements of procedural due process, all Defendants

are entitled to summary judgment on Plaintiff's claims in Count II of the Amended Complaint.

### D.      Qualified Immunity

Even if this Court could assume that Mr. and Mrs. Pickel have a substantive due process right relative to their associational interest with their grandsons, that interest was not clearly established at the time of the alleged constitutional violations.  Thus, the individual LCCYSA Defendants, Landis and Lauzus contend that they are entitled to qualified immunity to the extent they are being sued in their individual capacities.

In *Rees v. Office of Children & Youth*, 473 F. App'x 139, 143 (3d Cir. Mar. 30, 2012), the Court of Appeals was confronted with the question of whether employees of the Erie County Office of Children and Youth ("OCY") were immune from substantive due process claims asserted by a noncustodial grandmother in relation to her two minor grandchildren. In affirming the District Court's decision to grant the individual OCY employees qualified immunity, the Court noted:

> When assessing whether a right is clearly established, the inquiry requires determining "whether it would be clear to a reasonably officer that his conduct was unlawful in the situation he confronted." [. . .] Our analysis "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" [ . . . ]. Immunity should be granted if "the law did not put the officer on notice that his conduct would be clearly unlawful." [ . . . ]. There is no controlling law on point in the Third Circuit concerning grandparents' substantive due process rights relative to the custody and care of their non-resident grandchildren.

*Rees*, 473 F. App'x at 142 (emphasis added) (internal citations omitted). The law in the Third Circuit concerning the due process rights of grandparents in the custodial context has not changed since *Rees* was decided. Because the existence and/or extent of due

process protections for grandparents in the custodial context was unsettled at the time that

the Agency petitioned the Lancaster County Juvenile Court for custody of S.P.L. and

D.M.L., individual Defendants Natan, Van Cisco, Wnek, Doyle, Teeples, Landis and

Lauzus are immune from liability as to the allegations in Counts I and II of the Amended

Complaint.

   **E. Municipal Liability Claims Against LCCYA.**

   In Count III of the Amended Complaint, Plaintiffs allege a number of municipal

liability claims against the LCCYSA pursuant to 42 U.S.C. § 1983. LCCYSA, as a

county-operated social services agency, is treated as a municipality for purposes of

*Monell*. *See Hatfield v. Berube*, 714 F. App'x 99, 102 n.1 (3d Cir. 2017) (citing

*Mullholland v. Gov't Cnty of Berks, Pa.*, 706 F.3d 227, 237 (3d Cir. 2013)) (Pennsylvania

county offices of children and youth services are treated as municipalities for the

purposes of § 1983 municipal liability). Thus, the principles annunciated by the U.S.

Supreme Court in *Monell* apply to the Plaintiffs' claims against LCCYSA under § 1983

as if they had sued the County itself. *See Mullholland*, 706 F.3d at 237. ("When a suit

against a municipality is based on §1983, the municipality can only be liable when the

alleged constitutional transgression implements or executes a policy, regulation or

decision officially adopted by the governing body or informally adopted by custom.")

(citations omitted).

   These claims are predicated upon the same constitutional violations that underlie

Counts I and II of the Amended Complaint. *See* Am. Compl. at ¶ 103. Thus, Plaintiffs'

claims municipal liability claims against the LCCYSA fail as a matter of law because no

predicate constitutional violation has been alleged. *See Rees*, 744 F.Supp.2d 434, 462

(W.D. Pa. 2010) (citing *Bittner v. Snyder County, Pa*, 345 F. Appx. 790, 792-93 (3d Cir. 2009) (citing *Monell*, 436 U.S. at 694) ("It is well settled that before a municipality may be found liable under § 1983, there must be a constitutional violation). *See also Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006) (holding that "in order for municipal liability to exist, there must still be a violation of the plaintiff's constitutional rights") (citation omitted).

LCYSSA also moves for summary judgment on the *Monell* claims in the Amended Complaint because the claims do not identify a specific policymaker involved in the formation of the alleged "customs" or "policies" at issue. A complaint which neglects "to allege conduct by a municipal decisionmaker" cannot survive a motion to dismiss its *Monell* claim. *McTernan v. City of York*, 564 F.3d 636, 658-59 (3d Cir. 2008); *Rees*, 473 F. App'x at 143 (holding that a complaint cannot state a *Monell* claim if it "fails to link the alleged offending policies or customs to anyone within [a municipality] who had policy-making authority"); *Andrews v. City of Phila.*, 895 F.2d 1469, 1481 (3d Cir. 1990) (noting that a municipal decisionmaker in a § 1983 case must possess "final, unreviewable discretion to make a decision or take an action").  Because the Amended Complaint does not identify a municipal policymaker and sets forth no allegations about the conduct of such a policymaker, summary judgment must be granted to LCCYSA on the *Monell* claims based on policy or custom.  *See* Am. Compl. at ¶¶ 96-104.

Plaintiffs advance new theories of alleged municipal liability against LCCYSA in their Motion for Partial Summary Judgment, specifically contending that: (1) LCCYSA failed to establish policies, practices and customs to prevent deprivations of constitutional rights; (2) LCCYSA lacks policies and procedures which adequately address families'

constitutional rights; (3) LCCYSA lacks policies and procedures which adequately address the treatment of individuals *in loco parentis*; (4) LCCYSA lacks policies and procedures which adequately address the kinship care application process; and (5) LCCYSA lacks effective policies and procedures with regard to the development of child permanency plans.  These municipal liability theories are stated for the first time in Plaintiffs' Motion for Partial Summary Judgment.

Count III of the Amended Complaint is predicated upon a theory that LCCYA (1) "developed and maintained" policies "exhibiting deliberate indifference to the constitutional rights of families in Lancaster County" and (2) inadequately supervised and trained its caseworkers, "thereby failing to adequately prevent constitutional violations" on the part of its staff.  ECF No. 41 at ¶¶ 97, 101. Plaintiffs do not allege in the Amended Complaint that the complete absence of policies led to their alleged constitutional injury nor do Plaintiffs identify in the Amended Complaint the alleged training deficiencies they now allege in their Motion for Partial Summary Judgment.

The allegations in the Amended Complaint allege that policies, not the lack thereof, caused a deprivation of Plaintiffs' constitutional rights. *See* Am. Compl. at ¶¶ 97-98 (alleging that LCCYSA "developed and maintained policies or customs" that led to Plaintiffs' alleged injuries). Plaintiffs have failed to advance any other *Monell* theory in the operative complaint. With respect to the failure-to-train claim Plaintiffs now assert, the Amended Complaint does not allege that a county policymaker was ever put on notice that there were deficiencies in the training program. It also fails to describe the nature of the training program, any particular deficiencies in the training program, that the alleged

deficiencies caused Plaintiffs' injury, or any other averments that could support an allegation that LCCYSA caseworkers were inadequately trained.

LCYSSA contends, and this Court agrees, that Plaintiffs cannot now advance new theories of liability against LCCYSA that are completely divorced from the allegations found in the Amended Complaint. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (holding that a court may only consider legal theories set forth in a party's brief to the extent that they find support in the factual allegations set forth in the complaint); *Cf. Kocher v. Larksville Borough*, 926 F. Supp. 2d 579, 604-05 (M.D. Pa. 2013) (plaintiffs may not "expand [t]he[ir] claims to assert new theories for the first time" in briefs at the dispositive motion stage); *Leuthner v. Blue Cross & Blue Shield of Ne. Pa.*, 270 F. Supp. 2d 584, 588-89 (M.D. Pa. 2003) ("We will not permit Plaintiffs to sidestep their obligation to properly plead allegations within their Complaint by adopting arguments within their brief that are inconsistent with the allegations actually plead."). Plaintiffs cannot pursue claims against LCCYSA on a theory that they failed to enact certain policies since those claims were not pled in the Amended Complaint and were raised for the first time at summary judgment.

For all of these reasons, the County Defendants motion for summary judgment on Count III of the Amended Complaint will be granted and Plaintiffs' Motion for Partial Summary Judgment on Count III of the Amended Complaint must be denied.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs fail to state viable § 1983 claims under Counts I and II of the Amended Complaint for deprivation of a constitutional right.   For the same reason, Plaintiffs fail to prove a predicate claim for municipal liability against

LCCYSA under Count III of the Amended Complaint.  Moreover, the Plaintiffs' § 1983 claims against the individual Defendants fail because the individual Defendants are entitled to qualified immunity.

An appropriate Order follows.